*Kamordeen Muse-Ariyoh v. Board of Education of Prince George's County*
  No. 2116, September Term, 2016.  Opinion by Wilner, Alan M. (Senior Judge)

Appellant sued appellee for unlawful employment discrimination by failing to promote appellant on five separate occasions and for retaliation arising from his complaint to EEOC regarding the first rejection.  The Circuit Court entered summary judgment for the Board, and appellant appealed.  The Court of Special Appeals affirmed, holding:

(1) Under the circumstances of the case, the Circuit Court did not err in considering and granting the motion for summary judgment while appellant's motion to compel discovery was still pending.

(2) The destruction of paper documents after those documents have been converted to electronic format in accordance with a standard document management schedule does not constitute spoliation or give rise to an inference that the documents would be unfavorable to the party.

(3) A spoliation-type inference, standing alone, does not preclude summary judgment in an employment discrimination case in the absence of affirmative evidence of unlawful discrimination or retaliation.

(4) A person cannot properly claim employment discrimination in denying a promotion if the person does not apply for the promotion.

Circuit Court for Prince George's County
Case No. CAL15-16583

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2116

September Term, 2016

KAMORDEEN MUSE-ARIYOH

v.

BOARD OF EDUCATION OF
PRINCE GEORGE'S COUNTY

Eyler, Deborah S.
Friedman,
Wilner, Alan M. (Senior Judge, Specially
Assigned)

JJ.

Opinion by Wilner, J.

Filed: December 21, 2017

In June 2015, appellant, an African-American male born in Nigeria, filed this action in the Circuit Court for Prince George's County against his employer, the Board of Education for that county. He complained that (1) on five occasions, he was denied a promotion on account of his race and national origin in violation of unspecified Articles of the Maryland Declaration of Rights, unspecified sections of Md. Code, Title 20 of the State Government Article, and §§ 2-185 *et seq.* of the Prince George's County Code; (2) on the last four occasions, the denial also was in retaliation for his having complained to the Federal Equal Employment Opportunity Commission (EEOC) with respect to the first denial; and (3) in further retaliation of his complaint to EEOC, the Board disciplined him for alleged infractions and failed to conduct a timely annual review of his performance in 2014, which affected his eligibility for a salary increase.

In November 2016, the court, following a hearing, granted the Board's motion for summary judgment based on the court's ultimate conclusion that "there is no evidence that a reasonable jury could find that indeed [appellant] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination" and that "there is no evidence that a reasonable jury could find that indeed the Board did retaliate against the plaintiff." Hence, this appeal, in which appellant contends that the trial court erred in entering summary judgment (1) without considering his pending motion to compel discovery, (2) with respect to his retaliation claim, and (3) where, with respect to four of the denials, the job went to an individual outside of appellant's protected status; *i.e.*, someone other than an African-American male born in Nigeria.

1

Before we venture into the facts and the intricacies of the law, we need to deal with a preliminary issue that requires a very brief summary of what will be set forth in greater detail hereafter.  Under clear Supreme Court precedent (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), to prevail in an employment discrimination case where there is no direct evidence of unlawful discrimination – *i.e.*, where the evidence of discrimination is circumstantial in nature – the employee must first establish a *prima facie* case of unlawful discrimination.  If the employee succeeds in doing that, the burden shifts to the employer to articulate a non-discriminatory basis for the action complained of.  If the employer succeeds in that endeavor, the burden shifts back to the employee to establish that the non-discriminatory basis offered by the employer is a pretext and that the act complained of, in fact and in law, was the product of unlawful discrimination.

The thrust of the Board's motion for summary judgment, as explained in the written memorandum filed in support of it, was that appellant had failed to establish a *prima facie* case of unlawful discrimination and unlawful retaliation.  In a three-sentence paragraph, the Board also claimed that the Board had articulated legitimate non-discriminatory reasons for its actions and, on that basis alone, appellant had failed to produce legally sufficient facts to support his claim of discrimination.  In its oral argument on the motion, the Board noted the shifting burdens under *McDonnell Douglas* but focused its argument on the general proposition that appellant had failed to produce sufficient evidence of discrimination – that he had produced no evidence that the Board had found him more qualified than the candidates it selected.

Although followed by a brief written Order, the court announced its ruling extemporaneously from the Bench.  It found that appellant had shown that he was a member of a protected class (African-American and Nigerian), that he had applied for an open position, and

2

that he was qualified for the position.  The court then noted that he "must show in a prima facie case that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination" and concluded that "there is no evidence that a reasonable jury could find that indeed the plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination."

What is not entirely clear from this pronouncement is whether the court was holding that a *prima facie* case had not been established or that appellant had failed to show that the non-discriminatory reasons articulated by the Board were pretextual.  Appellant, almost in passing, raises this question in his brief.  In other settings, this might be a problem, but here it is not.  As we shall explain, even in the context of the *McDonnell Douglas* burden shifting protocol, the employee ultimately bears the burden of proving his claim of unlawful discrimination and, if he fails to do so, whether by failing to present a *prima facie* case initially or failing to show the employer's explanation was a pretext, the result is the same.

In this case, the Board did articulate non-discriminatory reasons for its actions and produced substantial evidence in support of that articulation, to which appellant responded, and whether we view that evidence as bearing on whether a *prima facie* case was established or whether pretext was established is largely immaterial.  Because of the full record that was made (1,640 pages of Record Extract) and to avoid the need for further proceedings in the Circuit Court, we shall apply the full three-pronged *McDonnell Douglas* approach and not cut the analysis off at the *prima facie* stage.

BACKGROUND

3

Appellant is an architect by training. He first became employed by the Board in 1989 as a Construction Observer in the Board's Department of Planning and Architectural Services. According to appellant, that job entailed his representing the Board on construction projects to ensure, through field observations, that all requirements were being met. From 1992 to 1995, he served as a Planning Assistant and, as such, became involved with the preparation of Capital Improvement Program budgets but still managed contractors' field activities. In 1995, he returned to the position of Construction Observer.

In 2002, as a result of a structural reorganization of the Board's Building Services Department, appellant was laterally transferred to the Department of Capital Programs as a Facilities Coordinator. In that position, he worked with other officials to determine priorities for renovations, repairs, or preventive maintenance and managed or partially managed several projects.

### First Denial: Director of Capital Programs

In July 2012, the Board advertised a vacancy for the position of Director of Capital Programs. The Director is "responsible for performing advanced professional architectural advisory service duties in the planning, design, and engineering of new or existing educational facilities." Among other things, the Director acts as liaison between the Board, the County Government, and the Maryland-National Capital Park and Planning Commission with respect to schools, assists in determining sites and the development of standard space requirements, assists in planning and developing facility needs of the school system, and prepares feasibility studies for the replacement of and additions and renovations to existing facilities.

4

Along with others, appellant applied for the position. The Board interviewed the two applicants it deemed most qualified. Appellant was not one of them. Ultimately, the Board selected neither of the applicants it had interviewed (nor any that it had not interviewed) and withdrew the posting. Seven months later, in February 2013, it readvertised the vacancy in a new posting. It appears that 24 individuals applied for the position on this second go-around. Appellant was not one of them. Four individuals were interviewed, including Sarah Woodhead, a white American female who, according to the record, had not submitted a formal written application but had inquired about the job, had been invited, apparently by the Board's Department of Human Resources, to be interviewed, and was regarded by the Board as an applicant.

The interviews were conducted by a panel of five persons, who ranked the applicants based on nine initial interview questions and six follow-up questions. Ms. Woodhead, who had 27 years of professional architectural experience in public policy, planning, and construction management, with a specialty in education infrastructure, was given the highest ranking. She received a composite score of 219, as compared with scores of 126, 157, and 159 for the other three. The interview notes of the panel members show as her strengths:

- "Thorough experience and knowledge of all aspects of school design and construction, including State requirements and control of costs,
- VERY knowledgeable of the work that needs to be done and has experiences that are connected to the job and expectations,
- Really strong sense of how capital projects/construction process works,
- In-depth knowledge of local school system CIP [Capital Improvement Program] world of work,
- Quiet strength of leadership,
- Embraces teamwork and empowerment,
- Really good communicator."

5

Unlike the other applicants, each of whom had identified weaknesses (and fewer strengths), no weaknesses were identified for Ms. Woodhead, and she was appointed. In October 2013, appellant filed a complaint with EEOC alleging that he was denied the appointment as a result of his race and national origin. That appeared to be based on (1) his belief that Ms. Woodhead was less qualified than he because she had no experience with Prince George's County building codes, standards, and regulations or with local vendors or school officials, and (2) the fact that she had not applied for the job. When an attempt at mediation failed, his complaint was transferred to the Maryland Commission on Civil Rights (MCCR). MCCR never adjudicated the matter but authorized the filing of this action.

### Second Denial: Facilities Supervisor – Maintenance

In April 2014, the Board advertised a vacancy for the position of Facilities Supervisor – Maintenance. Under the direction of the Director of Building Services, that person assists, coordinates, and supervises staff responsible for the repair and physical condition of school facilities, facility management, maintenance, and construction/renovation work. Five persons, including appellant, were interviewed for the position by a five-member panel, including Ms. Woodhead.

Based on answers to interview questions, appellant received the lowest composite score of 109. The others received scores of 123, 135, 144, and 160, respectively. The panel regarded appellant's strengths as limited to his experience with the county school system and the fact that he was a licensed architect but identified as weaknesses unspecific responses to the

6

interview questions, that his work had been project-focused rather than management oriented, that he was not "solution oriented," and a lack of management skills. In deposition testimony, Ms. Woodhead stated that appellant's responses were "nonspecific and rambling."

The two top-ranked applicants were invited for second-level interviews, and one of them, Keith Wharton, whom appellant describes simply as "American," but more particularly is an African-American, got the job. Despite the fact that Mr. Wharton had 25 years of direct experience controlling, directing, and managing facilities maintenance departments and was regarded by the interviewing panel as "technically knowledgeable," appellant complains that Mr. Wharton was not qualified for the job because he had no knowledge of Board projects and no experience with Prince George's County codes, standards, or vendors.

### Third Denial: Architectural Project Manager

A year later, in April 2015, the Board advertised a vacancy for the position of Architectural Project Manager. The duties of that position were to perform advance design work and construction administration, direct drafting activities for assigned Capital Improvement Program projects, and review the work of outside consultants. Appellant and four other applicants were interviewed by a four-member panel, including Ms. Woodhead. Of the five applicants, appellant was ranked fourth, with a total composite score of 110, compared with scores of 105, 111, 121, and 138 received by the others.

The panel feedback showed a number of strengths for appellant – 26 years of experience with the Board; technical expertise; in his management of one program, he had saved the school system $10 million; experience with the press; good experience with

7

contractor claims; and good knowledge of "several aspects" of school facilities. The feedback also showed a number of weaknesses, however, including failure to answer directly some of the questions, concern regarding public speaking and interaction with the public, and failure to respond to a question regarding a previous challenge with a difficult employee.

The position was given to the applicant who received the highest score, Ronald Skyles, an African-American male but not a Nigerian, with respect to whom the panel found as strengths: has technical qualifications, currently a Project Manager II in Capital Programs, clear understanding of k-12 architectural work, knowledgeable about architecture and design needs, and worked in government, private industry, and the school system. As in the other cases, appellant complained that Mr. Skyles was far less qualified than he because of his lack of experience with Board projects, standards, and vendors.

**Fourth Denial: Supervisor of Capital Programs**

A month after the interviews with respect to the Architectural Project Manager position, the Board advertised a vacancy in the position of Supervisor of Capital Programs. The holder of that position is responsible for assisting the Director of Capital Programs relative to facility planning, administration, and coordination of the school facilities design and construction program and, under the direction of the Director of Purchasing, serves as a liaison to the Purchasing Department on the coordination of capital projects through the bidding and implementation phases. Sixteen more specific duties were listed. Appellant applied for the position.

Three applicants, including appellant, were interviewed by a panel of three, including Ms. Woodhead. The position was awarded to the applicant with the highest score – Mr. Onukwubiri, a Nigerian-born African American male who scored 112, as opposed to appellant's score of 84 and the third applicant's score of 83. The interviewers found some of the same weaknesses with appellant as were found in the earlier interviews – not answering questions directly and inconsistent and inaccurate responses, added to which was minimal insight into policies and procedures.

Among appellant's complaints about that selection was that, in the announcement of the position, the Board stated that a license to practice architecture in Maryland was "preferred" and that Mr. Onukwubiri did not have such a license. He did have a bachelor's and a master's degree in architecture and had served for 17 years as Design and Construction Program Manager, Office of Support Services for the Queen Anne's County school system and five years as Senior Project Manager for the District of Columbia, and was then Project Manager II, Capital Programs for the Prince George's County Board.

### Fifth Denial: Director of Building Services

In November 2015, appellant applied for the position of Director of Building Services. Among the duties of that position are preparing the Building Services annual budget and exercising control over allocated funds, providing support for custodial services for all schools and administrative office buildings, and administering the Building Services Program for the school system. We are unable to locate in the Record Extract any information regarding an interviewing process or any scoring of the candidates. All we know from the record is that

9

appellant was not interviewed and the job was given to Samuel Stefanelli, a white American whom appellant regards as less qualified than he.

<u>DISCUSSION</u>

Although not citing the section, the Complaint presumably was filed pursuant to Md. Code, State Government Article, §20-1013, which permits a complainant to bring a civil action alleging an unlawful employment practice by the respondent if (1) the complainant initially filed a timely administrative complaint under Federal, State, or local law alleging an unlawful employment practice by the respondent; (2) at least 180 days have elapsed since the filing of the administrative action; and (3) the civil action is filed within two years after the alleged unlawful employment practice occurred. The Board does not suggest that those conditions were not met.

As noted, the Complaint alleges causes of action under the Maryland Declaration of Rights (Count III), Title 20 of the State Government Article (Count II), and the Prince George's County Code (Count I). No particular Article of the Declaration of Rights is mentioned, although appellant does allege that he was denied equal protection of the law, which is embodied without specific articulation in Art. 24. *Kirsch v. Prince George's County*, 331 Md. 89, 96 (1993). No particular section of the State Government Article is mentioned although, in his brief, appellant cites to §§20-606 (unlawful employment practices) and 20-1202 (permitting civil action for a discriminatory act prohibited by certain county codes, including the Prince George's County Code). The only section of the Prince George's County Code cited is §2-222,

10

prohibiting employers in the county from refusing to hire or acting against any person with respect to compensation or other terms or conditions of employment because of discrimination.

The underlying basis of the Complaint, applicable to all three counts, is that (1) in each of the five instances, appellant was the most qualified candidate and was passed over because of his race or national origin, (2) his rejection in the last four instances also was in retaliation for his having complained to EEOC with respect to the first instance, and (3) as further acts of retaliation, (i) in March 2014, he was falsely accused by the Construction Manager for the Department of Capital Programs of leaving his worksite early and failing to perform his duties, (ii) in April 2014, he was again reprimanded by the Construction Manager for inappropriately inviting a contractor to a meeting prior to an award of the contract, (iii) in January 2015, he was falsely accused by the Project Manager Supervisor of unprofessional conduct and a reprimand was placed in his personnel file, and (iv) the Board failed to conduct a required annual review of his performance in 2014, which affected his opportunity for an increase in salary.

As noted, after considering the evidence presented for and against the motion, the trial court found no legally sufficient evidence to support those contentions. In his brief, appellant adds the argument that could not have been made in the Complaint – that the entry of summary judgment was inappropriate because of the pendency of his motion to compel discovery and the Board's admission that it had destroyed certain relevant documents that had been requested in discovery.

The standard for reviewing the grant of a summary judgment was recently confirmed in *Rogers v. Home Equity USA*, 453 Md. 251, 263 (2017). Md. Rule 2-501(f) sets the general standard: a Circuit Court may grant summary judgment in favor of the moving party "if the

11

motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In reviewing the grant of summary judgment, the appellate court asks whether it was legally correct, without deference to the trial court. In making that decision:

> "We evaluate 'the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pleaded facts against the moving party'. . . . To defeat a defendant's motion for summary judgment, the opposing party must present admissible evidence 'upon which the jury could reasonably find for the plaintiff'" (Citations omitted)."

Employment discrimination cases are subject to that standard, but special caution is necessary. As pointed out in *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996), "while courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law."

That standard, with that caution, certainly would apply to the disposition of the substantive claims of unlawful racial and national origin discrimination in the denial of appellant's several applications for promotion and the claims of unlawful retaliation for appellant's engaging in the protected activity of complaining to EEOC regarding the denial of the first application. The issue of whether summary judgment should have been entered while the motion to compel discovery was pending is a procedural one that is subject generally to the noted standard – whether, construing the facts relevant to that issue in a light most favorable to appellant, the court should have proceeded as it did – but in a different context. We shall deal with that issue first.

12

**Pendency of Discovery Motion**

Appellant's Motion to Compel Discovery sought three categories of relief:

(1)   Clear and legible copies of Clarence Stukes's and Sarah Woodhead's interview notes;[1]

(2)   Complete interview notes associated with the failure to promote appellant to the positions of Architectural Program Manager, Supervisor of Capital Programs, and Facilities Supervisor-Maintenance; and

(3)   The ability to reconvene the deposition of Clarence Stukes after that discovery has been provided.

That motion was pending when the motion for summary judgment was heard.  Appellant argued it as part of his argument against the summary judgment motion, and the Board responded.  The court questioned appellant's attorney regarding his argument on that motion but made no reference to it when granting summary judgment.  The court obviously was aware of the motion and, at least inferentially, found it to be no impediment to ruling on the motion for summary judgment.

The essence of appellant's complaint in this regard is that: (1) he had requested but never received a copy of any application by Ms. Woodhead for the position of Director of Capital Programs; (2) the copies of Clarence Stukes's interview notes with respect to the Facilities Supervisor – Maintenance position were faint; (3) Ms. Woodhead's interview notes for the

---

[1] Clarence Stukes was the Chief of Supporting Services who was a member of the panel that interviewed applicants for the Director of Capital Programs position that Sarah Woodhead got and chaired the panel that interviewed applicants for the Facilities Supervisor position that Mr. Wharton got.

Architectural Project Manager position were blank; and (4) panel member interview notes regarding the Supervisor of Capital Programs position were absent.

With respect to an application from Ms. Woodhead, it seems to be clear, as previously noted, that she never submitted a formal written application but called Mr. Stukes, whom she knew, about the position, was told to contact the Human Resources Department, which apparently she did, in light of her interest and experience was invited to interview, and was regarded by the Board and the interview panel as an applicant notwithstanding the absence of a formal written application. Appellant has argued the lack of a formal application by Ms. Woodhead as evidence of discrimination against him. We conclude, however, that the failure to produce a document that apparently never existed has not prejudiced him in pursuing that argument.

With respect to the interview notes, the Board, in response to appellant's motion, contended that it had included in its production of requested documents the complete interview files it maintained for the relevant positions. It stated that, under its record management policy, all interview files are scanned and saved as electronic PDF documents, which are identical to the paper documents, that the paper documents are then destroyed, and that the electronic documents were produced. The Board stated also that it does not maintain more legible versions of the files produced in discovery, including the notes of Mr. Stukes. Those statements were confirmed in attached affidavits, and no evidence was produced that they are untrue or inaccurate.[2] Apart

---

[2] Most relevant was the affidavit of Alyce Hood, the custodian of records for the Board, who attested that the records provided by the Board in discovery were duplicative of its domestic business records and were true and correct copies of original records prepared or maintained by the Board. She stated that "all interview files are scanned and saved as electronic PDF

14

from that, appellant had Ms. Woodhead's and Mr. Stukes's deposition testimony regarding the interviewing process and their perceptions of the various candidates' strengths and weaknesses.

The Board's principal defense to appellant's claim is that the paper documents in question were immaterial with respect to whether summary judgment should be entered. Mr. Stukes was one of five on the interview panel that selected Ms. Woodhead. Appellant had not only the scores of each panel member with respect to each candidate interviewed but also the written perceptions of each panel member to the answers given by Ms. Woodhead to each of the interview questions.

The issue raised by appellant is whether the loss, destruction, or illegibility of interview notes in an employment discrimination case suffices to forestall the entry of summary judgment for the employer by raising an inference that the decision was not, in fact, as posited by the employer or, if it was, it was a pretext. The argument invokes the concept of spoliation – that, at trial, appellant may have been entitled to an instruction, or at least to make the argument, that, if the jury found that the Board's intent was to conceal evidence, the destruction or failure to preserve must be inferred to indicate that it believed its case was weak and that it would not prevail, and that, even if the failure to preserve was merely negligent, the jury could infer that the evidence would be unfavorable to the Board. *See* Maryland Civil Pattern Jury Instruction (MCPJI) 1.16. Either inference, appellant contends, suffices to make summary judgment inappropriate.

---

documents after which the paper copies are shredded in an effort to preserve storage space. The electronic format interview files are identical to the paper copies."

There are two problems with that argument.  First, there is no evidence that the Board, or any of its agents, deliberately or negligently destroyed or failed to preserve material evidence. Except perhaps in the most unusual of circumstances, the destruction of paper documents that have been converted into accessible electronic format in accordance with standard document management policies does not constitute spoliation and raises no inference that the evidence would be unfavorable in any way.  The evidence continues to exist.  We can take judicial notice that such conversion has become a standard and approved practice.  *See*, for example, Md. Rules 20-106(d)(3), 20-106 (e)(2), 2-422, and 16-908, and Md. Code, Commercial Law Article, Title 21.

Even if it were established that evidence relating to the respective interviews had been inadvertently lost or destroyed, from which some inference permissible under MCPJI 1.16 may arise, that inference alone would not constitute affirmative evidence of sufficient to defeat a motion for summary judgment.  Both the Court of Appeals and this Court have made that clear. In *Bereano v. State Ethics*, 403 Md. 716, 747 (2008), the Court, quoting in part from *Maszcenski v. Myers*, 212 Md. 346, 355 (1957) held:

> "'Although an inference arises from the suppression of evidence by a litigant that this evidence would be unfavorable to his cause . . . it is well settled  that this inference does not amount to substantive proof . . . .' (citations omitted).  Even in evidence spoliation cases, the fact finder is not permitted to find the destruction of evidence to be substantive proof that the evidence was unfavorable."

*See also DiLeo v. Nugent*, 88 Md. 59, 71 (1991) and *Castruccio v. Estate of Caastruccio*, 230 Md. App. 118, 151 (2016).

The application of that principle to the grant of summary judgment in an employment discrimination case has been dealt with twice by the U.S. District Court for the District of Columbia and at least once by the U.S. District Court in Massachusetts.

In *Chappell-Johnson v. Bair*, 574 F. Supp.2d 87 (2008), the plaintiff claimed sex discrimination by the Federal Deposit Insurance Commission in her non-selection for a vacant position and retaliation for several complaints she had made to EEOC. In response to the employer's motion for summary judgment, she asserted that documentation from the structured interview process, including the interview notes and evaluation sheets of two members of the interview panel were missing and that a jury could infer that the employer purposely lost or deliberately destroyed those documents because they contained information favorable to her claims. FDIC acknowledged that it no longer had those documents and had no plausible explanation for their disappearance. The Court rejected the plaintiff's argument, holding:

> "Even if [a spoliation] instruction is warranted here, it will not permit Chappell-Johnson to withstand summary judgment. '[T]he destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence – or utterly inadequate evidence – in support of a given claim to survive summary judgment on that claim. *Kronisch v. United States*, 150 F.3d 112, 128 (2nd Cir. 1998), *overruled on other grounds by Rotella v, Wood*, 528 U.S. 549, 120 S. Ct. 1075 (2000)." *Id.* at 102.

The court noted that it was undisputed that neither of the two members of the interview panel believed plaintiff to be the best qualified candidate and that "when all evidence in the record supports a legitimate, non-discriminatory reason for her non-selection, no reasonable jury could award damages against her employer based *solely* on *speculation* as to what *might* be contained in documents *not in evidence*. Simply put, without any *evidence*, a generalized adverse inference, *alone*, will not support a jury verdict." *Id.* (Emphasis in original).

17

The court confirmed that principle more recently in *Paulk v. Architect of the Capitol*, 79 F. Supp.3d 82 (2015).  The employer there had destroyed documents pertinent to the selection process despite a two-year preservation policy, and the court concluded that a reasonable inference could be drawn that the plaintiff performed well during his interview.  Citing the afore-quoted language from *Chappell-Johnson,* however, the court held that such an inference "alone was insufficient to create a genuine issue of material fact" or a finding that the "destroyed notes would have established pretext, let alone unlawful discrimination." *Id.* at 90.  *See also Hankey v. Town of Concord-Carlisle*, 136 F. Supp.3d 52, 73 (D. Mass. 2015).

Given all of the information regarding the evaluations that appellant had and in the absence of any substantial affirmative evidence that the scoring and interviewer comments were not legitimate or what they purported to be, we find no reversible error in the court's proceeding to decide the motion for summary judgment notwithstanding the pendency of the motion to compel.

### Requirements for Proving Unlawful Discrimination and Retaliation Claims

In relevant part, 42 U.S.C. §2000e-2 (part of Title VII of the Civil Rights Act of 1964) makes it an unlawful employment practice  for an employer to fail or refuse to hire an individual because of the individual's race, color, religion, sex, or national origin (unlawful discrimination). Section 2000e-3 makes it an unlawful employment practice for an employer to discriminate against an employee or applicant for employment because that individual has opposed an unlawful employment practice (unlawful retaliation).

Md. Code, State Government Article, §§20-606(a) and (f) contain nearly identical provisions. Section 2-222 of the Prince George's County Code is not as detailed but does preclude an employer in the county from refusing to hire any person because of discrimination. Because of the similarity in these laws, the Maryland courts generally use the Federal criteria and seek guidance from Federal Title VII decisions in determining a violation of the analogous State and county provisions. *See Chappell v. Southern Maryland Hosp.*, 320 Md. 483, 496 (1990); *Haas v. Lockheed Martin*, 396 Md. 469, 481 (2007); *Taylor v. Giant*, 423 Md. 628, 652 (2011); *Bryan v. Prince George's County*, 2011 WL 2650759 (U.S. Distr. Ct., D. Md. (2011)), *aff'd* 484 Fed. Appx. 775 (4th Cir. 2012).

The elements and shifting of burdens in an unlawful employment discrimination case were initially established in *McDonnell Douglas Corp. v. Green*, *supra*, 411 U.S. 792. As a prelude, the Court noted that, in enacting Title VII, Congress did not intend "to guarantee a job to every person regardless of qualifications . . . or because he is a member of a minority group" but that "it is abundantly clear that Title VII tolerates no [unlawful] discrimination, subtle or otherwise." *Id*. at 802. In the absence of direct evidence of unlawful discrimination, the shifting burdens were intended to provide a fair balance in applying those precepts. *See Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Under the approach articulated in *McDonnell Douglas,* to succeed in an employment discrimination case based on inferences drawn from circumstantial evidence, the plaintiff first must establish a *prima facie* case that (1) he/she was a member of a protected class, (2) he/she applied and was qualified for the position for which the employer was seeking applicants, (3)

19

despite his/her qualifications, he/she was rejected, and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. That case involved an alleged unlawful discharge. The plaintiff was fired because, as part of a protest against racial discrimination by the company, he participated in blocking access to a company facility and later chained the doors of the facility, thereby locking employees inside.

In a footnote, the Court recognized that "the facts necessarily will vary in [employment discrimination] cases" and the specification of the prima facie proof required from the plaintiff "is not necessarily applicable in every respect to differing factual situations." *Id.* at 802. *See also Furnco Const. Corp. v. Waters, supra*, 438 U.S. 567 at 575-76. That leeway has led the U.S. Court of Appeals for the Fourth Circuit to adopt a modification to the fourth requirement – that the position be held open – to take account of the situation, like the one here, where the position is *not* held open but is given contemporaneously to another applicant. In that setting, the Fourth Circuit Court has stated the fourth requirement to be that the plaintiff "show that he or she was rejected under circumstances giving rise to an inference of unlawful discrimination." *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir. 1991), following *Wright v. National Archives and Records Serv.*, 609 F.2d 702 (4th Cir. 1979). *See also Adams v. Trustees of the University of N.C.-Wilmington*, 640 F.3d 550 (4th Cir. 2011) and *Williams v. Human Resources*, 136 Md. App. 153, 164, n.2 (2000).

If the plaintiff satisfies those four requirements, the burden then shifts to the employer "to articulate some nondiscriminatory reason for the employee's rejection." *McDonnell Douglas* at 802. For purposes of summary judgment, the evidence in support of that articulation does not have to be persuasive but only sufficient to raise a genuine issue as to whether there was

20

unlawful discrimination. If the employer meets that test, the burden shifts back to the employee to demonstrate that the proffered reason was not the true reason for the adverse employment action but merely a pretext. That burden, in effect, merges with the employee's ultimate burden of proving an unlawful discriminatory practice. *Texas Dept. of Community Affairs v. Burdine, supra*, 450 U.S. at 256-57; *St. Mary's Honor Center v. Hicks, supra*, 509 U.S. at 515-17; *Hill v. Lockheed Martin*, 354 F.3d 277 (4th Cir. 2004).

The substantive elements of a retaliation claim are different, but in the absence of direct evidence the *McDonnell Douglas* burden-shifting approach applies. The employee first must establish a *prima facie* case that (1) he/she engaged in a protected activity, (2) the employer took an adverse employment action against him/her, and (3) the adverse employment action was causally connected to the protected activity. *Taylor v. Giant*, 423 Md. 628, 658 (2011); *Lockheed Martin v. Balderrama*, 227 Md. App. 476, 504 (2016); *Edgewood Management v. Jackson,* 212 Md. App. 177, 199 (2013). If the employee satisfies that burden, the burden of production shifts to the employer to offer a non-retaliatory reason for the adverse employment action, and, if the employer satisfies that requirement, the burden shifts back to the employee to show that the proffered reasons were a mere pretext. *Lockheed Martin, supra*, 227 Md. App. at 504.


**Analysis**

First Denial: Director of Capital Programs

The award of the job of Director of Capital Programs to Ms. Woodhead is in a different posture than the other claims. As noted, one of the requirements for establishing a *prima facie* case of an unlawful refusal to hire or promote is to show that the complainant applied for the job

21

that went to someone else. As a general rule, a person who does not apply for the job cannot complain when he or she does not get it. *See Velez v. Janssen Ortho, LLC,* 467 F.3d 802, 807 (2nd. Cir. 2015) ("Precedent in the analogous context of failure-to-promote claims also reflects the requirement that plaintiffs asserting discriminatory retaliation must show that they applied for a specific vacant position for which they were qualified and that they did not get the job"). Appellant did apply for the Director of Capital Programs job when it first was advertised in July 2012, but no one was selected at that time and the posting was closed. When the job was re-advertised seven months later, he did not apply, and therefore was not considered.

The case law does recognize several exceptions to the principle of "no application/no complaint" – that a person is excused for not applying if he/she is unaware of the vacancy because it was not properly posted, or if, like Ms. Woodhead, he/she makes some alternative effort to convey an interest in the position that is a functional equivalent of an application, or if it is made clear to the person, directly or because of a known standing policy of discrimination, that an application would be futile. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977); *Lockridge v. Board of Trustees of University of Arkansas*, 315 F.3d 1005 (8th Cir. 2003) (en banc); *E.E.O.C. v. Audrain Health Care, Inc.*, 756 F.3d 1083 (8th Cir. 2014); *Velez*, *supra*, 467 F.3d at 808*; Celestine v. Petroleos De Venezuella SA*, 266 F.3d 343 (5th Cir. 2001).[3] No evidence was presented to show the existence of any of those exceptions.

---

[3] *Swierkiewcz v. Sorema N.A.*, 534 U.S. 506 (2002) relaxed the pleading requirements for asserting a claim of employment discrimination, but not the evidentiary requirements. With that caveat, *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2nd Cir. 1998).

22

Appellant has not claimed an unawareness that the vacancy was being readvertised and has offered no evidence that he was dissuaded by the Board or any agent of the Board from reapplying or that there existed, at least at that time, a standing policy of discrimination based on race or national origin that was known to him.

Appellant argues that the readvertisement was merely a reopening of the first posting and that the Board should have regarded his earlier application as still pending, but the evidence indicates otherwise. The second posting was seven months later and had a separate vacancy number. It is not clear whether the panel that interviewed the four candidates selected for interview was the same panel that had interviewed the two applicants the first time or that whoever determined who should be interviewed the first time made that determination with respect to the second group of applicants. Appellant complains only that, having been prescreened eligible for the position with respect to the first vacancy announcement, it was incumbent on the Board, on its own initiative, to interview him for the second when he no longer showed any interest in it. We find no such duty.

**Other Denials: Unlawful Discrimination**

Appellant's unlawful discrimination (failure to promote) complaints regarding the four other denials fail on substantive grounds. In each case, even assuming that appellant produced *prima facie* evidence of racial or national origin discrimination, the Board articulated and provided supporting evidence of a non-discriminatory reason for its selection – relative qualifications – thereby placing the burden back on appellant to present admissible evidence

23

from which a trier of fact reasonably could find that was a pretext and that appellant's rejection was, in fact, due to his race or national origin.

Pretext evidence must have substance to it. The Supreme Court noted in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) that "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." The Court added that whether judgment as a matter of law is appropriate in any particular case may depend on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148-49. Focusing on that, the U.S. Court of Appeals for the Fourth Circuit concluded that:

> "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be material."

*Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006); *Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007).

Recapping the evidence, with respect to the Facilities Supervisor position, appellant was one of five persons interviewed. He received the lowest composite score of 109, and the job was offered to an African-American applicant who received the highest composite score (160). With respect to the Architectural Project Manager position, appellant was among four applicants who were interviewed; he received the next-to-lowest composite score of 110. The job was offered to

24

the African-American applicant who received the highest composite score (138). With respect to the Supervisor of Capital Programs position, appellant was among the three persons interviewed and received a composite score of 84. The job was offered to an African-American born in Nigeria who received a score of 112. With respect to the Director of Building Services position, appellant was not interviewed but, as we have indicated, the Record Extract does not indicate how many applicants were interviewed or what their scores were. All we know is that a white male got the job.

Appellant's position with respect to all four is that, in his view, he was more qualified than the person who got the job, in large part because of his training and experience as an architect and his greater familiarity with the local code, procedures, and vendors. Indeed, he more than suggests that familiarity with the local codes, procedures, and personnel is a necessary requirement that only he satisfied. Familiarity with local codes, procedures, and personnel may be helpful, but an experienced architect can learn them, and the Board obviously did not regard it as a critical qualification. Neither the Circuit Court nor this Court is in any position to find fault with that, or to regard it as pretextual. It is for the employer to determine the qualifications for particular jobs and to evaluate, in a non-discriminatory way, who in a pool of applicants, best possesses those qualities. As noted in *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005), the court does "not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendant." (Quoting from *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

The simple facts are that, (1) in all four cases, the decision was made based on evaluations stemming from the applicants' responses to neutral interview questions (2) in three of the four

25

cases, the job went to a black male, dispelling any suggestion of racial discrimination, (3) in one of those cases, it went to a Nigerian, dispelling any suggestion of animus against Nigerians, (4) in the fourth case, appellant has failed to supply us with any evidence that the choice of a white male was motivated by racial or national origin bias, and (5) in each of the three cases in which appellant was interviewed, the job went to the applicant who, through responses to the interview questions, had a composite score significantly higher than appellant's score. As this Court pointed out in *Williams v. Human Resources*, 136 Md. App. 153, 174 (2000), "a disgruntled employee's self-serving statements about his qualifications and abilities generally are insufficient to raise a question of fact about an employer's honest assessment of that ability." We find no error in the granting of summary judgment on the unlawful discrimination counts.

### Retaliation

Appellant's retaliation claim appears to be based primarily on the second, third, fourth, and fifth denials of his application for promotion following his complaint to EEOC regarding the Board's failure to consider him for the Director of Capital Programs position. In his Complaint, he also alleged retaliatory discipline (1) in March 2014 when he was accused by the Construction Manager for the Board's Department of Capital Programs (Ms. Sanchez) of leaving his worksite early, (2) in April 2014 when he was reprimanded by Ms. Sanchez for inappropriately inviting a contractor to a meeting prior to the award of the underlying contract, (3) by the failure to conduct a timely annual review of his performance, and (4) in January 2015, by a false accusation of unprofessional conduct by the Board's Project Manager Supervisor, the placement of a letter of reprimand in his file, and a comment made by Ms. Woodhead in regard to that incident. In his brief, however, he complains only about the rejection of his subsequent applications for

26

promotion and the failure to conduct a timely review in 2014. We shall regard the other incidents as abandoned.

We have discussed at some length the circumstances surrounding the last four applications for promotion and need not add to it. The Board offered a non-discriminatory basis for its actions that has not been shown to be pretextual. The same evidence that shows those actions were based on a legitimate analysis of the qualifications of the applicants and did not constitute unlawful employment discrimination suffices to support the Circuit Court's determination that a trier of fact could not reasonably find those actions to be "causally connected to the protected activity" and therefore could not reasonably find them to be unlawfully retaliatory.

That leaves us, then, with the lack of a timely annual review in 2014. Appellant claims that such a review, to have been completed by June 2014, was required by the collective bargaining agreement between the Board and the Association of Supervisory and Administrative School Personnel, of which he was a member, and that, under that agreement, increases in salary were contingent on effective performance as noted in the evaluation.

In June 2015, appellant received what was marked an "unofficial copy" of an Annual Evaluation Form. In a response to that document, he acknowledged that the evaluation was "generally positive," which it was, although under the heading "Work Habits and Attitude," it noted that, while he "works effectively with little supervision and keeps his supervisor fairly well informed," during the preceding year "there have been occasions where [his] attitude and approach have been a challenge, where he takes exception with the directions he is given." Appellant responded in July, noting that what he exhibited on those occasions was simply his professional judgment. He did not contend or suggest in his response that either the untimeliness

of the evaluation or the reference to attitude problems amounted to any kind of retaliation for having complained to EEOC. More significantly, he has failed to present any evidence that, in fact, his salary was affected by the failure to conduct a review by June 2014 or that he suffered any other detriment as a result.

On this record, we affirm the Circuit Court's conclusion that no evidence was presented that reasonably could lead a trier of fact to conclude that the Board had engaged in unlawful retaliation in response to appellant's complaint to EEOC.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**

28