*Robert A. Podles v. Consumer Protection Division, Office of the Attorney General of Maryland*, No. 184, September Term, 2021.  Opinion by Harrell, Glenn T., Jr.

**ANTITRUST AND TRADE REGULATION – STATUTORY UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION – ENFORCEMENT AND REMEDIES – STATE AND LOCAL ADMINISTRATIVE AGENCIES – SUBPOENAS; WITNESSES**

**ANTITRUST AND TRADE REGULATION – STATUTORY UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION – PARTICULAR RELATIONSHIPS – PROFESSIONALS**

Circuit court did not err in granting summary judgment in favor of the Consumer Protection Division of the Office of the Attorney General of Maryland (the "Division") against Robert A. Podles, appellant, after Podles, a Maryland-licensed real estate salesperson, failed to produce documents in accordance with an administrative investigatory subpoena issued by the Division regarding allegations that Podles had violated the Maryland Consumer Protection Act ("MCPA").  Although the MCPA expressly exempts the "professional services" of a real estate salesperson from the Act's purview, that exemption did not preclude the Division from issuing and enforcing an investigatory subpoena against Podles simply because he was a real estate salesperson or because the information being sought may turn-out to have been related to his "professional services" as a real estate salesperson.

Circuit Court for Harford County
Case No. C-12-CV-20-000677

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 184

September Term, 2021

_____

ROBERT A. PODLES

v.

CONSUMER PROTECTION DIVISION,
OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND

_____

Nazarian,
Shaw Geter,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.

_____

Filed:  December 15, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Consumer Protection Division of the Office of the Attorney General of Maryland (the "Division") filed, in the Circuit Court for Harford County, a Petition to Enforce Administrative Subpoena directed to Robert A. Podles, appellant, after Podles, a Maryland-licensed real estate salesperson, failed to produce documents in accordance with an administrative subpoena issued by the Division regarding allegations that he had violated the Maryland Consumer Protection Act ("MCPA"). The court entered summary judgment in favor of the Division and ordered Podles to produce all documents requested by the Division. Podles noted this timely appeal, in which he presents a single question for our consideration:

> Did the circuit court err in granting summary judgment in favor of the Division, where the statutory scheme granting the Division its subpoena powers, the MCPA [Maryland Consumer Protection Act], expressly states that the Act does not apply to the professional services of a real estate salesperson?

For reasons to be explained, we hold that the circuit court did not err. Therefore, we affirm its judgment.

## BACKGROUND

The MCPA, codified in Commercial Law Article ("CL") § 13-101, *et seq.*, of the Maryland Code, was enacted to protect consumers from unfair or deceptive trade practices. Within that statutory framework, the General Assembly granted the Division the power to receive and investigate complaints regarding potential violations of the MCPA and to initiate its own investigation of unfair and deceptive trade practices. Md. Code, Comm.

Law § 13-204(a). In the course of such an investigation, the Division may subpoena witnesses and compel the production of documents. Md. Code, Comm. Law § 13-405(a).

Regarding the potentially relevant scope of its field of regulation of unfair or deceptive trade practices in the present case, the Legislature included certain activities concerning "consumer realty," e.g., "the sale, lease, rental, loan, or bailment of any … consumer realty[.]" Md. Code, Comm. Law § 13-303(1). "Consumer realty" is defined as "credit, debts or obligations, goods, real property, and services which are primarily for personal, household, family, or agricultural purposes." Md. Code, Comm. Law § 13-101(d)(1).

The General Assembly also included a provision, which is set forth in CL § 13-104, that exempts certain professionals from liability under the MCPA when those individuals are engaged in "professional services." Md. Code, Comm. Law § 13-104(1). The exemption relevant to this case includes the professional services of a "real estate broker, associate real estate broker, or real estate salesperson[.]" *Id.*

This case arises out of an investigation by the Division into whether Podles was involved in certain lease-to-own and land installment contracts that may have violated the MCPA. According to the Division, the disputed contracts appeared to violate the MCPA "through the inclusion of illegal fees, provisions shifting to the tenant the responsibility for maintaining leased property in a habitable condition, and default provisions which allow[ed Podles] to terminate the contracts without refunding payments made toward the principal." As noted, Podles is a real estate salesperson. He has been licensed by the Maryland Real

2

Estate Commission since 2016 and has provided various real estate services to clients in Maryland.

In February 2020, as part of its investigation into whether Podles had violated the MCPA, the Division issued an administrative subpoena commanding him to produce documents that were "related to his trade practices concerning consumer realty." The subpoena asked also for various documents that were related to "any Maryland real estate-related transaction" in which Mr. Podles had been involved. Podles did not produce any documents in response.

The Division filed a Petition to Enforce Administrative Subpoena and motion for summary judgment in the circuit court. The Division asked the court to order Podles to respond to the subpoena. He filed a written opposition, arguing that the Division was not authorized to issue the subpoena because CL § 13-104 states expressly that the MCPA does not apply to real estate salespersons.

Following a hearing, the circuit court granted the Division's motion for summary judgment and ordered Podles to produce the documents. The court found that, although CL § 13-104 precluded enforcement of the MCPA against the professional services of real estate salespersons, it did not preclude completely the Division from issuing a subpoena as part of an investigation into whether a real estate salesperson violated the MCPA.

This timely appeal followed. Additional facts will be supplied below.

## DISCUSSION

Podles contends that the circuit court erred in granting the Division's motion for summary judgment and in ordering him to comply with its subpoena. He argues, as he did below, that the statutory exemption in CL § 13-104 precludes enforcement of the subpoena.

The Division contends that the circuit court granted properly its motion for summary judgment. The Division argues that it had the authority to issue the investigatory subpoena and that Podles was not immune from the Division's subpoena power simply because he was a real estate salesperson.

### *Standard of Review*

Maryland Rule 2-501(f) provides that a court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "In reviewing the grant of summary judgment, the appellate court asks whether it was legally correct, without deference to the trial court." *Muse-Ariyoh v. Bd. of Educ. of Prince George's Cnty.*, 235 Md. App. 221, 235 (2017). "We evaluate the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pleaded facts against the moving party[.]" *Id.* (citations and quotations omitted). "In conducting our review of a grant of a motion for summary judgment, we consider only the grounds upon which the trial court relied in granting summary judgment." *D'Aoust v. Diamond*, 424 Md. 549, 575 (2012) (internal citations and quotations omitted).

To determine the validity of an investigatory subpoena issued by an administrative agency, the following threefold test is applied: "[w]hether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad." *Washington Home Remodelers, Inc. v. State, Off. of Att'y Gen., Consumer Prot. Div.*, 426 Md. 613, 623 (2012) (citation and quotations omitted). Podles's arguments implicate only the first element: whether the Division's subpoena was authorized by statute. That is a question of statutory interpretation. We review the circuit court's ruling in that regard *without deference*. *Id.* at 623-24.

"The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 467 Md. 126, 149 (2020) (citation and quotations omitted). "The starting point of any statutory analysis is the plain language of the statute, viewed in the context of the statutory scheme to which it belongs." *Kranz v. State*, 459 Md. 456, 474 (2018) (citations and quotations omitted). "'If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction.'" *Noble v. State*, 238 Md. App. 153, 161 (2018) (quoting *Espina v. Jackson*, 442 Md. 311, 322 (2015)). If, on the other hand, words of a statute are ambiguous, "a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.* at 162 (citation and quotations omitted).

In any event, when the statute is part of a larger statutory scheme, as is the case here, the statute must be interpreted in that context. *Andrews*, 467 Md. at 149. "That means that, when interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme." *Id.* (citations and quotations omitted). "Thus, statutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or any portion, meaningless, surplusage, superfluous or nugatory." *Id.* (citations and quotations omitted).

*Analysis*

In 1967, the General Assembly created the Division out of concerns "that there was an erosion of public confidence in merchants who, in increasing numbers were engaging in deceptive practices during the course of consumer transactions[.]" *Washington Home Remodelers*, 426 Md. at 629-30. Several years later, the General Assembly enacted the MCPA and tasked the Division with its enforcement. *Id.* at 630-31; *see also Andrews*, 467 Md. at 149-50.

The purpose of the MCPA was "to set certain minimum statewide standards for the protection of consumers across the State" and to "maintain the health and welfare of the citizens of the State." Md. Code, Comm. Law § 13-102(b)(1) and (3). In enacting the statute, the General Assembly found "that consumer protection is one of the major issues which confront all levels of government" and that "improved enforcement procedures are necessary to help alleviate the growing problem of deceptive consumer practices[.]" Md. Code, Comm. Law § 13-102(a)(1) and (3). The General Assembly found also that it needed

6

to "take strong protective and preventive steps to investigate unlawful consumer practices" and that "favorable consideration be given to requests … to improve the enforcement capabilities or increase the authority of the Division." Md. Code, Comm. Law § 13-102(a)(3) and (b)(3). The General Assembly declared, therefore, that the MCPA "shall be construed and applied liberally to promote its purpose." Md. Code, Comm. Law § 13-105.

Within the MCPA's statutory framework, the Division was established as an arm of the Attorney General and was given broad powers to enforce and interpret the MCPA. *Consumer Prot. Div. Off. of Att'y Gen. v. Consumer Publ'g Co.*, 304 Md. 731, 745 (1985). Specifically, the Division was granted, among other things, "the powers and duties to: (1) [r]eceive and investigate complaints from any person affected by any potential or actual violation of [the MCPA]; [and] (2) [i]nitiate its own investigation of any unfair or deceptive trade practice[.]" Md. Code, Comm. Law § 13-204(a)(1) and (2). The Division was afforded also the power to "issue cease and desist orders, adopt rules and regulations which further define unfair or deceptive trade practices or otherwise effectuate the purposes of the [MCPA], and seek a temporary or permanent injunction in a civil enforcement proceeding." *Consumer Publ'g Co.*, 304 Md. at 745. The Division was granted subpoena powers, which are set forth in CL § 13-405. Under that statute, "[i]n the course of any examination, investigation, or hearing conducted by him, the Attorney General may subpoena witnesses, administer oaths, examine an individual under oath, and compel production of records, books, papers, contracts, and other documents." Md. Code, Comm. Law § 13-405(a).

7

As noted, the General Assembly, in enacting the MCPA, exempted certain activities of specified individuals from the Act's purview. That exemption, found in CL § 13-104, provides, in pertinent part, that the MCPA "does not apply to … [t]he professional services of a … real estate broker, associate real estate broker, or real estate salesperson[.]" Md. Code, Comm. Law § 13-104(1). Furthermore, it is well-settled that administrative agencies "have power to subpoena information but only through the express statutory grant of such power by the General Assembly." *Miller v. Baltimore Cnty. Police Dep't*, 179 Md. App. 370, 378 (2008); *see also Washington Home Remodelers,* 426 Md. at 623.

The question here, then, is whether the exemption contained in CL § 13-104 circumscribes the Division's subpoena powers, as set forth in CL § 13-405. That is, we must decide whether the Division is authorized by statute to issue a subpoena in a case such as this one, where the professional services of the individual target of the subpoena may implicate an exemption from the purview of the MCPA.

Unfortunately, the MCPA does not define "professional services." There is no legislative history regarding the enactment of CL § 13-104 or its implication in relation to the Division's subpoena powers. *Andrews*, 467 Md. at 152 (2020). We are unable also to find a reported Maryland appellate opinion that addresses directly the question posed here.

Appellant relies on *Dyer v. Criegler*, 142 Md. App. 109 (2002) and *Lopata v. Miller*, 122 Md. App. 76 (1998), two cases in which we held that the MCPA does not support a private cause of action against a real estate agent, where the claims were based on the agent's professional services. *E.g. Dyer*, 142 Md. App. at 120; *Lopata*, 122 Md. App. at 93. Neither of those cases, however, discusses whether the exemption set forth in CL §

8

13-104 precludes the Division from issuing an investigatory subpoena pursuant to CL § 13-405.

A more analogous case is *Washington Home Remodelers, Inc., v. Consumer Protection Division, supra*. In that case, the Division issued a subpoena to Washington Home Remodelers ("WHR") seeking documents that the Division claimed were relevant to its investigation into potential unfair and deceptive trade practices. *Washington Home Remodelers*, 426 Md. at 616. WHR demurred, arguing that the Division had acted outside its statutory authority "by seeking discovery into matters in which the regulatory authority resides exclusively with either the Commissioner of Financial Regulation of the Department of Labor, Licensing and Regulation (DLLR) or the Maryland Home Improvement Commission under their respective enabling statutes." *Id.* The circuit court ruled ultimately that the Division acted within its statutory authority in issuing the subpoena, and entered summary judgment in favor of enforcement of the subpoena. *Id.* at 623.

On appeal before the Court of Appeals, WHR argued that the Division's subpoena went beyond the coverage of the MCPA because it sought the production of information that related exclusively to two other statutes, the Maryland Consumer Credit Reporting Agencies Act and the Maryland Home Improvement Law, neither of which the Division had the authority to enforce. *Id.* at 624. WHR asserted that, because those two statutes addressed specifically the matter at hand, the more specific statutes should trump any general power vested in the Division by the MCPA. *Id.* The Division countered that it was seeking merely enforcement of its administrative subpoena, which had been issued as

9

part of the Division's investigation into whether WHR violated the MCPA. *Id.* at 628-29. The Division argued that, although it did not have the authority to enforce the two statutes at issue, it was "authorized to investigate complaints that may for the most part be based on issues outside of the [MCPA], provided that the activities complained of constitute a potential violation of the [MCPA]." *Id.* at 629.

The Court of Appeals agreed with the Division, holding that the Division acted within its authority in issuing the subpoena. *Id.* at 631, 637. The Court noted that the Division was authorized to begin an investigation and issue a subpoena "on any complaint, even one largely based on issues outside the [MCPA], if a potential violation of the [MCPA] also occurred." *Id.* at 632 (citation, quotations, and emphasis omitted). The Court noted further that, although "the mischief that both the Credit Reporting Act and the Homeowner's Law exist to remedy is beyond the [MCPA,] … an investigation into possible unfair trade practices that may relate to activities proscribed by those statutes is properly the grist for the investigative mill." *Id.* at 634-35. The Court explained that "an administrative prosecution is not the function and purpose of the initial investigative subpoena" and that an investigative agency such as the Division "must retain the authority to obtain information that enables it to fulfill its statutory mandate[.]" *Id.* at 633. The Court noted that the Division was authorized by CL § 13-405 to obtain information as part of an investigation and that the Division's investigative authority flowed from CL § 13-405. *Id.* The Court noted further that, if the Division's investigation later revealed no MCPA violation, then CL § 13-403(b)(2) required that the Division issue an order dismissing the complaint. *Id.; see also* Md. Code, Comm. Law § 13-403(b)(2). The Court

reasoned that "requir[ing] that the Division must demonstrate a [MCPA] violation in the first instance would hamstring its investigative authority and render section 13-403(b)(2) of the [MCPA] superfluous." *Id.*

In another case, *Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112 (2013), the Court of Appeals considered whether the billing practices of a health care provider constituted "professional services" exempt from the purview of the MCPA pursuant to CL § 13-104. *Id.* at 126. In holding that the billing practices did not exempt the health care provider from liability in a private cause of action, the Court explained that, although "health care provider" is one of the enumerated professions listed in CL § 13-104, "not everything that a licensed professional does is a 'professional service.'" *Id.* at 125-26, 129. The Court noted that other Maryland laws distinguish "the commercial and entrepreneurial aspects of a medical practice from the actual rendering of health care services when applying laws relating to 'professional services.'" *Id.* at 130. The Court noted also that the Division had construed the MCPA to include the billing practices of health care providers and that "[t]his interpretation of the statute by the agency charged with administering it is entitled to considerable weight." *Id.* at 128-29. Thus, the Court declined to adopt a broad reading of the exemption for "professional services" and held that "[t]he commercial aspects of a medical practice, such as compliance with laws concerning who may be billed and how, are not exempt from the [MCPA]." *Id.* at 132.

In a related case, *Andrews & Lawrence Professional Services, LLC v. Mills, supra*, the Court of Appeals considered whether the MCPA's exemption for the professional services of an attorney applied to all services rendered by the attorney when undertaking a

11

debt collection activity. *Andrews*, 467 Md. at 145. There, the plaintiffs brought an MCPA action against their homeowners' association, claiming that the homeowners' association was liable for the deceptive debt collection practices of a law firm that had been retained by the homeowners' association to collect delinquent dues and other fees. *Id.* at 132-33. The circuit court dismissed the complaint on the grounds that the homeowners' association could not be held liable for the actions of the law firm because CL § 13-104 precluded claims related to the professional services of an attorney. *Id.* at 141. This Court reversed, holding that the circuit court erred in finding that the "professional services" exemption shielded the homeowners' association from liability. *Id.* at 142.

The Court of Appeals affirmed our judgment. *Id.* at 169. Relying on its holding in *Scull*, the Court "decline[d] to adopt a blanket professional services exemption under the [MCPA] for all conduct undertaken by a lawyer or a law firm when the lawyer or firm is engaged in debt collection activity." *Id.* at 153-54. It explained that "[s]uch an interpretation would be inconsistent with related debt collection statutes enacted by the General Assembly." *Id.* at 154. The Court reasoned that such an interpretation would be inconsistent also with "our established case law which requires that we narrowly construe exemptions where the General Assembly has created remedies that are not found in common law." *Id.* at 157.

Against this backdrop, we hold that the Division was not precluded from issuing and enforcing an investigatory subpoena against Podles simply because he was a real estate agent or because the information being sought may relate to his "professional services" as a real estate agent. The caselaw makes clear that the Division is authorized by statute to

12

investigate potential violations of the MCPA and to issue subpoenas as part of those investigations, even in cases where it is determined later that no violation occurred or in cases where the information being sought may relate to activities proscribed by other statutes. The caselaw makes clear also that not everything a licensed professional does is a "professional service" under CL § 13-104. As a result, there may be situations in which a professional, like Podles, is liable under the MCPA, even though that profession is one of those enumerated in CL § 13-104. Those situations are "properly the grist for the investigative mill[,]" *Washington Home Remodelers*, 426 Md. at 635, and the Division should be permitted to issue and enforce a subpoena in furtherance of such an investigation.

To be sure, the Division's subpoena powers are derived directly from the MCPA, and the plain language of CL § 13-104 expressly states that the MCPA does not apply to the professional services of a "real estate broker, associate real estate broker, or real estate salesperson[.]" Md. Code, Comm. Law § 13-104(1). Podles argues that the unambiguous language of CL § 13-104 leads to the inescapable conclusion that the Division's subpoena powers are unenforceable against individuals who, like he, are exempt from the MCPA's scope.

We are unpersuaded. Were we to read CL § 13-104 as Podles suggests, *i.e.*, as precluding the Division from issuing an investigatory subpoena when the subpoena seeks information which may be related to the professional services of an enumerated professional, such a reading would be inconsistent not only with guiding caselaw, but would be inconsistent also with the relevant statutory scheme viewed as a whole. Although we look, in discerning the Legislature's intent, to a statute's plain language, we "do not

13

read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Andrews*, 467 Md. at 161 (citation and quotations omitted). "Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Id.* (citation and quotations omitted).

As noted, the MCPA was enacted in part "to improve the enforcement capabilities or increase the authority of the Division." Md. Code, Comm. Law § 13-102(a)(3). In setting forth the MCPA's statutory scheme, the General Assembly declared that "strong protective and preventive steps" were needed "to investigate unlawful consumer practices" and that "improved enforcement procedures [were] necessary to help alleviate the growing problem of deceptive consumer practices[.]" Md. Code, Comm. Law § 13-102(a)(3) and (b)(3). The General Assembly granted the Division "broad powers to enforce and interpret the [MCPA]." *Consumer Publ'g Co.*, 304 Md. at 745.

As we observed earlier in this opinion (*see* op. at 2), the Division was granted jurisdiction to investigate and prosecute allegations of unfair or deceptive trade practices involving, among other things, "consumer realty." Although this may suggest some tension with the exemption of professional services of a real estate salesperson set forth in CL § 13-104(1), it is premature at present to resolve whether there is ambiguity in Title 13 of the MCPA regarding those sections.

Given that framework, we cannot imagine that the General Assembly, in enacting CL § 13-104, intended to curtail the Division's ability to investigate potential MCPA violations in cases in which the individual target of the subpoena claims exemption

14

pursuant to CL § 13-104. Such an interpretation would be inconsistent with the General Assembly's clear mandate in enacting the MCPA and would frustrate its intended purpose, which is to improve the Division's enforcement capabilities, increase the Division's authority, and provide the Division broad powers to enforce and interpret the MCPA.

Podles, relying on *Maryland Econ. Dev. Corp. v. Montgomery Cnty.*, 431 Md. 189 (2013), argues that, because CL § 13-104 exempts the professional services of real estate salespersons, that specific exemption should trump the more general subpoena powers granted to the Division by CL § 13-405. We disagree. The general proposition relied on by Podles is that "where one statutory provision specifically addresses a matter, and another more general statutory provision also may arguably cover the same matter, the specific statutory provision is held to be applicable and the general provision is deemed inapplicable." *Clarksville Residents Against Mortuary Defense Fund, Inc. v. Donaldson Props.*, 453 Md. 516, 538-39 (2017) (citation and quotations omitted); *see also Maryland Econ. Dev. Corp.*, 431 Md. at 212-13. That proposition is inapplicable here, however, because the two provisions at issue – CL § 13-104 and CL § 13-405 – do not "cover the same matter," particularly when considered in the context of the guiding caselaw and available legislative history. We construe CL § 13-405 as permitting the Division to issue a subpoena as part of any investigation into potential violations of the MCPA. We construe CL § 13-104, on the other hand, as insulating certain individuals from enforcement of the MCPA when claimed violations are related to those individuals' professional services. Stated another way, CL § 13-405 grants the Division the authority to investigate someone for potential MCPA violations via a subpoena, whereas CL § 13-104 exempts that person

15

from liability if it is determined that the violation was related to the professional services of an enumerated professional. When read that way, the two statutes are not in conflict, and any analysis as to which is the more "specific" provision is unnecessary. Importantly, such a reading harmonizes the two statutes in a manner that is consistent with the purpose, aim, and policy of the Legislature in enacting the MCPA.

The circuit court did not err in granting the Division's motion for summary judgment and ordering Podles to comply with the Division's request. If, after discovery is given, Podles believes that the Division's pursuit of charges implicates his professional services as a real estate agent, he may renew those objections.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

16